UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RANDY L. HUBBERT, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 1:22-CV-14 SRW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 12. Defendant filed a Brief in Support of the Commissioner's Decision. ECF No. 13. Plaintiff did not file a Reply. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.     Factual and Procedural Background**

On July 22, 2019, Plaintiff Robert L. Hubbert protectively filed an application for supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 63. Plaintiff's application was denied on initial consideration. Tr. 64-67. On December 13, 2019, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 70-72.

1

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on March 15, 2021. Tr. 33-56. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Stella Frank. *Id*. at 50-55. During the hearing, Plaintiff amended his alleged onset date from August 1, 2014 to July 22, 2019. Tr. 10.

On May 24, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 10-21. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 163-65. On December 2, 2021, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.    Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

3

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**III.     The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of July 22, 2019. Tr. 12. Plaintiff "has the following impairments, severe in combination: lower extremity edema, obesity, and mild osteoarthritis of the right knee." *Id*. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 15-16. The ALJ found Plaintiff has the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can never climb ladders, ropes, or scaffolds. Due to occasional edema, the claimant would need to elevate his lower extremities during his regularly scheduled work breaks.

Tr. 16. The ALJ found Plaintiff is unable to perform any past relevant work as an overnight stocker and home health aide. Tr. 19, 51. The ALJ further found Plaintiff was born on November 11, 1962 and was 56 years old, which is defined as an individual of advanced age, on the date the application was filed. *Id.* Plaintiff has at least a high school education. *Id.*

The ALJ determined the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills. *Id.* Relying on the VE's testimony

5

and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform. These representative occupations included change house attendant (*Dictionary of Occupational Titles* ("*DOT*") No. 358.687-010, with approximately 71,000 positions nationally), lab equipment cleaner (*DOT* No. 381.687-022, with approximately 25,000 positions nationally), and linen room attendant (*DOT* No. 222.387-030, with approximately 6,000 positions nationally). Tr. 19-20. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since July 22, 2019, the date his application was filed. Tr. 20.

## IV. Discussion

Plaintiff argues the RFC is not supported by substantial evidence because the ALJ "failed to rely on any medical opinion and instead made up the RFC whole cloth." ECF No. 12 at 3-4. Plaintiff takes specific issue with the ALJ's consideration of State Agent Dr. Marsha Toll's Psychiatric Review Technique assessment, *see* Tr. 60-61, and State Agent Dr. Manuel Salinas's Physical Consultative Examination, Tr. 59-60. Plaintiff contends that because the ALJ "effectively rejected" the opinions of the consultants once this case reached the hearing level, the ALJ "had to rely on her own lay opinion in constructing Plaintiff's RFC." ECF No. 12 at 4. Plaintiff further asserts the ALJ erred in developing the record because it does not include any medical evidence addressing Plaintiff's ability to function in the workplace. The Court will separately address the ALJ's RFC determination as to Plaintiff's mental and physical impairments.

### A. Dr. Toll's Assessment and the ALJ's Analysis of Plaintiff's Mental Impairments

In analyzing Dr. Toll's opinion, the ALJ wrote the following:

At the request of the state Agency, Marsha Toll, Psy.D., reviewed available
evidence and on October 24, 2019, assessed the claimant has a medically

6

> determinable impairment of Depressive, Bipolar, and Related Disorders, but there was insufficient evidence to evaluate the claimant's limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or in adapting or management oneself. Dr. Toll's assessment that there was insufficient evidence at the time of her review is persuasive. However, evidence at the hearing level demonstrates that the claimant's depression is non-severe due to typically normal mental findings on examination and the minimal treatment it seemingly required.

Tr. 14.

To support the above, the ALJ cited to numerous records evidencing the non-severity of Plaintiff's depression. Tr. 13-15. Specifically, on February 24, 2019, Plaintiff was admitted to the emergency room due to a suspected drug overdose. Tr. 239-65. He responded quickly to Narcan, and throughout his treatment was described as cooperative with an appropriate mood, affect, and judgment, and negative for suicidal thoughts. Tr. 244, 247. On March 6, 2019, Plaintiff was formally diagnosed with depressive disorder and prescribed Sertraline.[1] Tr. 275-78. The record does not indicate that he experienced any issues or side effects from the medication, or that he required any treatment other than the prescription.

On July 17, 2019, during a routine check-up, Plaintiff's mental status was described as "normal mood and affect and active and alert." Tr. 273. His Sertraline prescription was increased by 50 mg "to help better control depression symptoms." Tr. 273. On January 1, 2020 and January 2, 2020, emergency room admissions records from two separate hospital visits found him negative for depression. Tr. 319, 580. On January 17, 2020, Plaintiff underwent a Biopsychosocial Assessment. Tr. 513-35. Plaintiff denied suicidal ideations or feeling "blue," and the evaluating physician indicated he did not suffer from any psychiatric issues. Tr. 519, 535. On January 20, February 10, April 27, and July 29, 2020, Plaintiff's treating physicians

---

[1] "Sertraline is an antidepressant used as a first-line treatment of major depressive disorder." *National Library of Medicine*, https://www.ncbi.nlm.nih.gov/books/NBK547689/ (last visited January 19, 2023).

7

described his mental status as normal. Tr. 289, 293, 297, 301. On October 26, 2020, Plaintiff reported he had stopped using drugs earlier in the year and, upon a psychiatric examination, his mood, behavior, thought content, and judgment were described as normal. Tr. 604. On February 22, 2021, his psychiatric exam was unchanged. Tr. 659. Throughout the majority of 2020, Plaintiff denied feeling down, depressed, or hopeless, except for a brief period in September which he attributed to coping with his mother's passing. Tr. 288, 292, 296, 300, 508.

After finding Plaintiff's depression to be a non-severe impairment, the ALJ determined he had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. ECF No. 14-15. In making these determinations, the ALJ cited to the underlying record evidencing Plaintiff's ability to follow commands and remember information, consistent cooperative and friendly demeanor, and self-reported abilities to get along with family and others, manage himself, shop in a commercial setting, and take care of his home. *See* Tr. 244 (described as "cooperative, appropriate mood [and] affect, normal judgment, non-suicidal"), 272 (confirmed ability to care for himself), 288 (same), 292 (same), 348 ("able to follow commands"), 363 ("alert and oriented, cooperative, following commands"), 387 ("does follow commands and is cooperative"), 514 (reported living on his own), 519 (denied problems with concentration), 529 (exhibited normal memory upon mental status examination), 526 (reported enjoyment when spending time with family or others), 531 (Biopsychosocial Assessment revealed "mild" disability in "concentration on doing something for ten minutes"), and 582 (exhibited cooperativeness and appropriate mood and affect upon psychiatric examination).

In determining a claimant's RFC, an ALJ must consider some medical evidence as part of her consideration of all relevant evidence, including treatment notes, observations, and a

8

claimant's subjective statements. *See Koch v. Kijakazi*, 4 F.4th 656, 667 (8th Cir. 2021). The ALJ in this case properly relied on medical observations and treatment notes in determining Plaintiff's RFC. As summarized above, the ALJ cited to numerous medical records supporting the finding that Plaintiff's mental impairments were controlled with medication, and his symptoms were stable overall. Thus, the ALJ appropriately considered the medical record in determining the RFC. Where substantial evidence supports the ALJ's decision, it may not be reversed merely because substantial evidence may support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (*citing Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

To the extent Plaintiff is arguing the ALJ should have sought another State Agent's opinion to explicitly formulate his mental RFC, the Court finds the ALJ was not required to obtain additional records or a consultative examination. *See, e.g.*, *Stallings v. Colvin*, 2015 WL 1781407, at *3 (W.D. Mo. Apr. 20, 2015) (citing *Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005)) ("Eighth Circuit case law reveals that an ALJ can appropriately determine a claimant's RFC without a specific medical opinion so long as there is sufficient medical evidence in the record."). The lack of a specific medical opinion evaluating how Plaintiff's mental impairments would affect his ability to function in the workplace does not necessitate a finding that the ALJ failed to develop the record. Although the ALJ has the duty to develop the record, it is the Plaintiff's responsibility to provide medical evidence to show he is disabled. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008); *see also* 20 C.F.R. §§ 404.1512, 416.912. Ultimately, Plaintiff bears the burden of proving disability. The ALJ is required to order a consultative examination only if the medical records do not provide sufficient medical evidence to determine whether the claimant is disabled. *Hensley v. Colvin*, 829 F.3d 926, 932

9

(8th Cir. 2016); and *Battreal v. Saul*, 2021 WL 1143828, at *4 (E.D. Mo. Mar. 25, 2021). *See also* 20 C.F.R. §§ 404.1519a(b), 404.151.

The Court finds the ALJ did not fail to develop the record. The record as a whole provides a sufficient basis for the ALJ's decision, and does not support Plaintiff's argument that the ALJ relied on her own lay opinion or made up the RFC out of whole cloth. *See, e.g.*, *Hovis v. Colvin*, 2016 WL 4158867, at *12-13 (E.D. Mo. Aug. 5, 2016) (the ALJ appropriately relied solely on medical records when records demonstrated improvement with conservative treatment); *Peterson v. Colvin*, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) (holding "[e]vidence of Plaintiff's actual daily activities and the medical evidence that existed were sufficient to support the ALJ's determination about Plaintiff's capabilities").

Although Plaintiff was taking prescription medication for depression, he consistently denied feeling down, depressed, or hopeless, except for a brief period which he specifically attributed to his mother's death. Additionally, his mental status and psychological examinations were largely normal throughout the relevant period. As discussed above, Plaintiff reported no issues to his treating providers about getting along with others or maintaining activities of daily living due to depression. Thus, the Court finds the ALJ's RFC determination was based on some medical evidence as the law requires. District Courts "may not reverse merely because we would have decided differently, or because substantial evidence supports a contrary outcome." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014).

**B. Dr. Salinas's Opinion and the ALJ's Analysis of Plaintiff's Physical Impairments**

In analyzing Dr. Salinas's opinion, the ALJ wrote the following:

On November 1, 2019, Manuel Salinas, M.D., assessed that there was insufficient evidence to evaluate the claimant. Dr. Salinas's assessment that there was insufficient evidence at the time of his review is persuasive. However, evidence at the hearing level allowed for evaluation that the claimant has physical

> impairments that are severe in combination; specifically, his lower extremity issues as seen in imaging and in clinical findings when aggravated by his obesity result in vocational limitations.

Tr. 18. The ALJ cited to several records noting Plaintiff's obesity and edema. *See* Tr. 293 ("healthy-appearing and obese" with "edema bilateral legs/feet"), 297 ("healthy-appearing and obese" with "tenderness and limited ROM" due to edema), 307 ("mild tricompartmental degenerative arthritis" in right knee), 507 (complaints of "bilateral swelling"), 510 (noting edema and weight gain), 604 (same), 660 (same).

Plaintiff contends the ALJ "points to no medical evidence in the record demonstrating Plaintiff's ability to function in the workplace" and "draws upon h[er] own inferences from the medical evidence in finding that Plaintiff could perform a very specific range of medium work." ECF No. 12 at 4. Consequently, Plaintiff argues the ALJ should have further developed the record by ordering a consultative examination. *Id.* at 6-7. The Court does not agree.

The ALJ exhaustively summarized the treatment Plaintiff received for his edema and obesity diagnoses. Tr. 17-18. The ALJ noted that on July 17, 2019, near the time of the alleged onset date, Plaintiff appeared to his treating provider for a hypertension follow up appointment with complaints of low back pain. Tr. 17, 271-74. During the appointment, Plaintiff confirmed he had no issues caring for himself, and walked without any restriction. Tr. 272. Upon physical examination, no edema or musculoskeletal issues were noted. Tr. 273.

From January 2, 2020 to January 15, 2020, Plaintiff was admitted to Mercy Hospital in St. Louis for third-degree burns after using heroin and falling asleep on a heater. Tr. 17, 311-504. Upon discharge, he was described to be in "no distress" with "good ROM (range of motion)." Tr. 17, 333. During hospitalization, Plaintiff experienced no edema or cyanosis in his extremities. Tr. 319, 340, 350, 359, 370, 382, 393, 401, 411, 419, 427, 436, 449. On January 17, 2020,

Plaintiff appeared to a pre-scheduled Biopsychosocial Assessment "pushing a walker, hunched over." Tr. 530. The assessor noted that besides his slow and ataxic gait and balance he had normal coordination and motor strength. Tr. 17, 539. Three days later, on January 20, 2020, Plaintiff appeared for a follow up visit for examination of his burns. Tr. 299-302. He was not using an assistive ambulation device and, as the ALJ noted, the "[e]xamination did not reflect edema and no such assessment was made." Tr. 17.

On February 10, 2020, Plaintiff complained of right knee pain and bilateral leg and foot swelling. Tr. 17, 295. He appeared for an office visit without an ambulatory device, but exhibited edema, tenderness, and limited range of motion in his extremities. Tr. 296-97. Plaintiff was provided with a right knee injection for pain. Tr. 298. A radiological examination was performed, which revealed "[m]ild tricompartmental degenerative arthritis." Tr. 17, 307. On April 27, 2020, Plaintiff appeared for a follow up visit. Tr. 17, 291. Once again he walked without restrictions despite exhibiting "edema (1+ pitting edema bilateral legs/feet)." Tr. 292-93. Plaintiff was prescribed Furosemide[2] for "localized edema." Tr. 293.

On July 29, 2020, Plaintiff continued to complain of leg pain and swelling. Tr. 17, 287-89. The evaluating physician noted the "edema may be due to his Hep C" and recommended seeing a hepatologist. Tr. 287. He was prescribed an additional prescription of Torsemide[3] to treat the edema. Tr. 290. On September 29, 2020, Plaintiff appeared for another follow up visit and exhibited bilateral swelling. Tr. 18, 507. The record states he was ambulatory and "walks without restriction." Tr. 508. Although some edema was noted upon examination, he was

---

[2] "Furosemide is used to treat edema (fluid retention; excess fluid held in body tissues) caused by various medical problems, including heart, kidney, and liver disease. Furosemide is in a class of medications called diuretics ('water pills'). It works by causing the kidneys to get rid of unneeded water and salt from the body into the urine." *Medline Plus*, https://medlineplus.gov/druginfo/meds/a682858.html (last visited January 19, 2023).

[3] Torsemide is also used to treat edema and is in the same class as diuretics. *Medline Plus*, https://medlineplus.gov/druginfo/meds/a601212.html (last visited January 19, 2023).

described as "healthy-appearing." Tr. 509-10. His provider did not include any notes regarding continued edema treatment. *See* Tr. 510.

On October 26, 2020, Plaintiff visited his primary care physician for his untreated Hepatitis C. Tr. 601. The medical notes indicate he was diagnosed with Hepatitis C "in the 1990's," which has remained untreated since then because he did not like the medication side effects. Tr. 603, 605. Upon a musculoskeletal examination, "trace bilateral lower extremity" edema was found. Tr. 17, 604. The provider did not observe any gait abnormalities or use of an assistive device. Although Plaintiff testified during his March 15, 2021 hearing to using a cane "daily" for the past "couple of years," Tr. 43, 48, the ALJ determined that the record did not reflect any such steady use of such an assistive device. Tr. 16.

The ALJ then discussed the records related to Plaintiff's obesity, which she determined to be a severe impairment. *See* Tr. 18, 271 (249 pounds, BMI of 33.5), Tr. 295 (248 pounds, BMI of 33.4), Tr. 291 (260 pounds, BMI of 35), Tr. 287 (271 pounds, BMI of 36.5), Tr. 507 (274.5 pounds, BMI 37), 657 (280 pounds, BMI of 37.7). The ALJ confirmed that in formulating the RFC she considered his weight and the impact it had on his ability to ambulate. Tr. 18.

After addressing and summarizing the above medical records, the ALJ determined the following:

> Overall, the record shows complaints and findings of edema some visits, and no such findings at other visits. The record shows very sporadic use of an assistive device. Further, the claimant's treatment was limited to an injection in his right knee and Torsemide or Furosemide to help control the swelling. Even when edema was observed, the claimant most commonly displayed no abnormalities of gait and no use of or need for an assistive device. The limitation in the residual functional capacity to elevating his legs at regularly scheduled breaks adequately addresses the edema. There is no objective basis to include the use of an assistive device.

. . .

> Because of the combination of the claimant's right knee pain, lower extremity swelling due to edema, and obesity, he is limited to a range of medium work that allows for elevating his legs to avoid lower extremity swelling and eliminating climbing ladders, ropes, or scaffolds to reduce risk of aggravating his knee pain, as well as possible harm due to mobility issues.

Tr. 18.

In her written opinion, the ALJ thoroughly discussed Plaintiff's testimony and the record evidence documenting his treatment for his bilateral lower extremity edema. Upon review of the record as a whole, substantial evidence supports the ALJ's RFC determination. Again, it is Plaintiff's burden, and not the Commissioner's burden, to prove his RFC. *Hensley*, 829 F.3d at 932; *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995). There is no dispute that Plaintiff has medical impairments which cause him to experience chronic edema in his lower extremities, and the record shows that Plaintiff has received numerous conservative recommendations from his physicians relative to his edema symptoms throughout the alleged period of disability, including prescription medication, pain injections, and improving his diet. An ALJ may properly weigh conservative treatment as a negative factor while assessing a claimant's self-reports concerning their symptoms. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

Upon radiological examination of his right knee, the results described "mild tricompartmental degenerative arthritis." Tr. 17, 307. As the ALJ noted, while medical providers diagnosed him with lower extremity edema there is no documented concern for disabling functional limitations. To the contrary, Plaintiff was consistently described to be able to manage himself and perform activities of daily living without issue, and his gait or stations were not described to be a reoccurring issue. Plaintiff regularly reported he was independent in his living and had no issues operating a motor vehicle. Tr. 49, 250, 345, 581, 615, 626.

Notably, his treating provider expressed concern that his edema was caused by untreated Hepatitis C. Tr. 289. Another record indicated he has not taken medicine for Hepatitis C since the 1990's. Tr. 603, 605. A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001) (claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain); *Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir. 1997) (holding impairments which are controllable or amenable to treatment do not support a finding of disability, and failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits); *Johnson v. Bowen,* 866 F.2d 274, 275 (8th Cir. 1989) (holding ALJ can discredit subjective complaints of pain based on claimant's failure to follow a prescribed course of treatment).

Moreover, there is no evidence in the record that Plaintiff has ever been directed by a medical provider to elevate his legs to alleviate his chronic edema for a frequency or duration which would render him unable to perform medium work as specified in his RFC, or that he was medically required to use an ambulation device. The only records which recommend elevation or a walker relate to caring for the severe burns he sustained after falling asleep on a heater. *See* Tr. 311-504. Plaintiff's testimony regarding his reliance on a cane is unsupported by the medical record, as discussed by the ALJ and summarized above. An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016). The record evidence simply does not support Plaintiff's claims as to the limitations imposed by his chronic edema; thus, the ALJ properly discounted his testimony. Additionally, the Court finds that the record as a whole contained sufficient evidence to formulate an RFC without ordering further testing or

15

examinations. *Kamann v. Colvin*, 721, F.3d 945, 950 (8th Cir. 2013) (ALJ may issue a determination without seeking additional evidence so long as the record provides a sufficient basis for the ALJ's decision.").

For the aforementioned reasons, the Court finds Plaintiff's arguments to be without merit as the record was fairly and fully developed. Substantial evidence in the record as a whole supports the ALJ's decision, which is also consistent with Social Security Administration Regulations and case law.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Randy L. Hubbert's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 20th day of January, 2023.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE